**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH**

**MICHAEL COOPER**  　　　　　　　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFF**

**v.**　　　　　　　　　　　　　　　　　　　　　　　**CIVIL ACTION NO. 5:15-CV-P249-TBR**

**SOJNIA BOWER** *et al.*　　　　　　　　　　　　　　　　　　　　　　　　　　　　**DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

　　　　This is a civil rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff Michael Cooper leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594 U.S. 199 (2007), and two motions for leave to file an amended complaint. For the reasons set forth below, the Court will grant in part Plaintiff's motions for leave to file an amended complaint and the action will be dismissed in part and allowed to continue in part.

**I. MOTIONS FOR LEAVE TO FILE AMENDED COMPLAINTS**

　　　　Plaintiff filed his original complaint (DN 1) on December 18, 2015, against Defendant Sojnia Bower, a correctional officer at Kentucky State Penitentiary (KSP), in her individual capacity for violating his bodily privacy.[1]

　　　　On April 4, 2016, Plaintiff filed an "amended complaint" (DN 10) in which he sought to make claims of retaliation against eleven additional KSP officials whom he listed as Defendants. Because this complaint seeks to add claims regarding events post-dating the original complaint,

---

[1] Although Plaintiff states in this complaint that "any and all future Amendments to this action as to defendant shall be exclusively brought in any . . . individual capacities," the Court construes Plaintiff's complaints as actually bringing this action against Defendants in their official, as well as individual capacities, because he seeks injunctive relief in each complaint that he has filed and in his motion for a preliminary injunction. In addition, in his second amended complaint (DN 12), Plaintiff states that he intends to sue Defendants in both their individual and official capacities.

the Court construes this document as a motion for leave to file a supplemental complaint and will grant such motion. *See* Fed. R. Civ. P. 15(d) ("[T]he court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.")

On April 18, 2016, Plaintiff filed another "amended complaint" (DN 12) in which he seeks to add claims, thirteen additional KSP officials as Defendants, and one additional Plaintiff named Garfield Evans.  Garfield Evans, however, did not sign the original complaint, the first amended complaint, or the second amended complaint, and is, therefore, not a proper plaintiff before the Court.[2]  In addition, 28 U.S.C. § 1654 provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ."  The statute, however, "does not permit plaintiffs to appear *pro se* where interests other than their own are at stake." *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002); *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) ("[I]n federal court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer."); *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (advising that § 1654 "does not allow for unlicensed laymen to represent anyone else other than themselves") (citation omitted).  Therefore, since Plaintiff is proceeding *pro se*, he cannot bring claims on behalf of other inmates.

Thus, the Court will grant Plaintiff's motion for leave to amend (DN 12) with regard to the claims personal to him but deny those relative to Garfield Evans.

In the event Garfield Evans would like to file an action on his own behalf regarding the allegations contained in these complaints, the Court will direct the Clerk of Court to send him a 42 U.S.C. § 1983 packet.

---

[2] Although Plaintiff did attach a signature page to DN 12 with the name "Garfield Evans" printed on the signature line, the handwriting of that name matches the handwriting of Plaintiff.

## II. SUMMARY OF COMPLAINTS

Plaintiff filed his first complaint against Defendant Bower. As relief against Defendant Bower, Plaintiff seeks money and punitive damages and injunctive relief in the form of "inforceing Bodily Prvacy by femal officals."

In his complaint, Plaintiff alleges that he is housed in the "special management unit" at KSP. According to Plaintiff, pursuant to KSP policies and procedures, KSP staff are required to make rounds in the "special management unit" every 30 minutes and to conduct a visual inspection of the inmate inside the cell. Plaintiff alleges that on November 16, 2015, at 12:13 p.m., Defendant Bower was passing out canteen sheets so that inmates could order "stationary items." Plaintiff alleges that when Defendant Bower asked Plaintiff if he would like a canteen sheet, she also looked inside his cell. He states that, at this time, he was using his toilet and "had his pants down around his ankles, shirtless, sitting on the toilet, wiping hisself." Plaintiff alleges that he told Defendant Bower that he was on the toilet and that she was embarrassing him by watching him. Plaintiff alleges that Defendant Bower initially left but then returned to his cell and looked at him as he was getting off the toilet and that, when he tried to turn away from her view, he fell and hit the sink and the bunk in his cell. Plaintiff then states that as Defendant Bower continued to make her rounds on that day, she repeatedly looked into his cell while he was using the toilet. Attached to Plaintiff's complaint is the statement of another inmate regarding these events.

On April 4, 2016, Plaintiff filed his first amended complaint (DN 10) against Defendant Bower and eleven additional KSP officials, in their individual capacities, for retaliation. Plaintiff alleges that Defendant Bower and the eleven additional Defendants retaliated against him for either filing the instant action against Defendant Bower and/or for helping Evans file grievances

and his own lawsuit.  Plaintiff alleges that he had been assigned to be the legal aide of Evans who "was being held in administrative segregation and couldn't access legal books by requesting them by title."  Plaintiff alleges that Defendants retaliated against him for these actions by harassing him, firing him from a job, falsely charged him with having a knife, and ultimately transferring him to a different cell house – "7 c/h."

Plaintiff alleges that the conditions in his new cell house are harsh.  He states that he is living around inmates with mental illness who "yell, beat, and talk to themselves all hours of the night" and that he cannot sleep.  He also states that he has been taken off his "physc medication, back and shoulder pain medication" as part of the retaliatory treatment.  He continues "7 c/h has been a very deterring experience and was done to stop me from advancement in mine and Mr. Evans protected conduct.  When I was brought to 7 c/h I was brought without my property.  When it was brought my legal work was missing again."

Plaintiff concludes his amended complaint by stating as follows:

> On approximately 3-17-16 at 3:20 Plaintiffs Michael Cooper and Garfield Evans went on hunger strike and suicide watch due to the fear of our safety and we wanted to be watched because of the treatment we have been receiving from c/o's and Administration.

On April 18, 2016, Plaintiff filed a second amended complaint (DN 12).  In this complaint, Plaintiff makes allegations against thirteen additional KSP officials whom he alleges have continued to take retaliatory action against himself and Evans since 2014.  Plaintiff states that he has only now been able to bring these allegations to federal court due to these retaliatory actions.  In addition to his bodily privacy and retaliation claims, Plaintiff also indicates that he is bringing claims for excessive force.  Plaintiff's allegations also suggest that he is making a claim for the alleged taking of money from his prison trust account.  In this complaint, Plaintiff states that he is seeking declaratory and injunctive relief against all Defendants in their official and

individual capacities which will provide that Defendants must "stop the retaliation of inmates at K.S.P. for filing grievances and exercising there 1st amendment right, and that this prison allows just understanding people to work here."

In his complaints, Plaintiff seeks monetary and punitive damages and injunctive relief (DN 21).  Plaintiff has also filed a motion for a preliminary injunction (DN 11) in which he seeks "mental health treatment, medical treatment, . . . legal redress without fear of retaliatory treatment, held legal mail, [and get] out of segregation together to pursue legal redress."[3]

### III. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A.  Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[3] The Court ordered Defendants to respond to Plaintiff's motion for a preliminary injunction and they did (DN 16). But the Court subsequently ordered a more specific response and, thus, the motion has not yet been ruled upon.

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc.* v. *Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV. ANALYSIS

### A. 42 U.S.C. § 1983 CLAIMS

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person

acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a § 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

To the extent that Plaintiff sues Defendants in their official capacities, "[o]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Because all Defendants are employees or officers of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, to the extent that Plaintiff seeks money damages from state officers or employees in their official capacities, he fails to allege cognizable claims under § 1983. Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against these Defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Thus, the monetary damages claims against these Defendants in their official capacities will be dismissed.

However, the Court will allow Plaintiff's claims against Defendants in their official-capacities to proceed to the extent that he is seeking injunctive relief against them. "[O]fficial-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. at 167 n.14; *see also Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011) ("An *Ex Parte Young* action may be commenced against a state official acting in her official capacity and may seek [only] prospective relief to end a continuing violation of federal law."). The *Ex Parte Young* exception provides that an individual may be sued in his or her official capacity for prospective injunctive relief to end a continuing violation of federal law by

7

that official. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). "*The Ex Parte Young* exception . . . applies only when the lawsuit involves an action against state officials, not against the state." *Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior*, 160 F.3d 602, 607 (10th Cir. 1998).

1. **Bodily-Privacy Claim**

Plaintiff's initial claim against Defendant Bower is that she intentionally watched him while he was on the toilet and that she continued to watch him while he was on the toilet throughout her shift on November 16, 2015.

"Neither the Supreme Court nor the Sixth Circuit has ever expressly recognized that the fourth amendment 'right to privacy' encompasses the right to shield one's naked body from view by members of the opposite sex." *Kent v. Johnson*, 821 F.2d 1220, 1226 (6th Cir. 1987). The Sixth Circuit agrees with other circuits "in recognizing that a convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners." *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992). "Couched in fourth amendment terms, the inquiry becomes whether plaintiff has a reasonable expectation of privacy from such 'searches.'" *Kent v. Johnson*, 821 F.2d at 1226.

In *Kent v. Johnson*, the Sixth Circuit found a constitutional violation where "women guards were permitted and required to observe [the inmate] performing necessary bodily functions in his cell and while showering." *Id*. at 1224. However, the Sixth Circuit later held that accidental viewing of a prisoner's naked body by a prison guard of the opposite sex is not a constitutional violation. *Mills v. City of Barbourville*, 389 F.3d 568 (6th Cir. 2004). In *Mills* the Sixth Circuit distinguished that case from *Kent* on the basis that "*Kent* involved prison policies

8

that subjected inmates to *routine* searches or viewing by guards of the opposite sex." *Id*. at 579. Of interest in *Mills*, in addressing a claim brought against one of the opposite sex defendants for intentionally looking at her while in the shower, the Sixth Circuit stated that "[i]f plaintiff can demonstrate that [defendant] planned or intended to see her during the search, he would not be entitled to qualified immunity." *Id*.

Upon consideration, the Court will allow the privacy claim to proceed against Defendant Bower in her individual capacity.

### 2. Retaliation Claims

Most of Plaintiff's claims are claims of retaliation. Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. In most cases, "the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). "[U]nless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury." *Id*.

#### a. Defendant Warden Randy White

Plaintiff's only allegations against Defendant Warden White are that White refused to help him with his various complaints of retaliation and allowed the other Defendants to retaliate against him.

The doctrine *of respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. at 691 (1978); *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Additionally, "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see Shehee v. Luttrell*, 199 F.3d at 300 (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Because Plaintiff only alleges that Defendant White failed to act and has not set forth any wrongful acts by Defendant White, his retaliation claim against Defendant White will be dismissed.

### b. Defendant Bower

Plaintiff alleges that after he filed a grievance against Defendant Bower, she began "pushing trash over the rail and hitting [his] door to wake him up." He also says she told him, "I got you now." Plaintiff alleges that on December 28, 2015, he received a "category 4-12" write-up from Defendant Bower for inappropriate sexual behavior as retaliation for filing this action against her.

### c. Defendant Troy Belt

Plaintiff alleges that on December 13, 2013, Defendant Belt watched him be brutally assaulted by a "Kasey Kazee" and then told him, "See what happens when you file grievances on staff." Plaintiff alleges that after Kazee did this to him, Kazee was given a job and money was placed in his commissary account.

Plaintiff alleges that Defendant Belt put a "keep away" on Plaintiff and Evans and that Defendant Belt had another inmate file a "confidential report" against him and Evans in retaliation for Plaintiff providing legal assistance to Evans.

Plaintiff also alleges that Defendant Belt sent him to "7 c/h" for filing grievances and that, as he was taken to "7 c/h," he was "tazzed, kicked, and elbowed in the ribs" and hit on his back, shoulders, stomach, and legs.

### d. Defendant Bruce Von Dwingelo

Plaintiff alleges that Defendant Belt told him that Defendant Von Dwingelo had put him in "7 c/h" to "teach him a lesson." Plaintiff alleges that Defendant Cranor and Defendant Belt told Defendant Von Dwingelo to take his clothes, mattress, and property and leave him in a cell with only concrete and his boxers.

### e. Defendant Skyla Grief

Plaintiff alleges that Defendant Grief told him would be sent to "7 c/h" if he did not stop filing so many grievances. Plaintiff also alleges that Defendant Belt told him that Defendant Grief had put him in "7 c/h" to "teach him a lesson." Plaintiff further alleges that Defendant Grief put a "conflict" or "keep away" on Plaintiff and Evans because Plaintiff was helping Evans file grievances and a lawsuit. Plaintiff alleges that Defendant Grief also told him that if he did

11

not "stop writing letters to Frankfort" she would send "[Evans] to Eastern and strip me out and let me rot in 3 cell house."

### f. Defendant Joy Myers

Plaintiff alleges that Defendant Myers is the "director of the program" and that she worked with Defendants Roberts and Grief to keep Plaintiff and Evans away from one another because Plaintiff was helping Evans file grievances and a lawsuit.

### g. Defendant Jill Roberts

Plaintiff alleges that Defendant Roberts told him he could not be "in the program" because he was helping Evans file a lawsuit and grievances and that she worked with Defendants Grief and Myers to keep Plaintiff and Evans away from one another because Plaintiff was helping Evans file grievances and a lawsuit.

### h. Defendant Timothy Hawkins

Plaintiff alleges that Defendant Hawkins retaliated against him by firing him from the "Walkman Job" and taking pens and grievance forms from his cell. Plaintiff alleges that Defendant Hawkins told him he would rot in "7 c/h" if did not drop the lawsuit against Defendant Bower and his grievances.

### i. Defendant Jesse Coombs

Plaintiff alleges that that when Defendant Coombs saw that Plaintiff was "filing on [Defendant Bower]," he became "aggressive with me, yelling and cursing. He grabbed my arm and threatened me to drop the lawsuit or this type of treatment will happen to me everyday." Plaintiff further alleges that Defendant Coombs "trashed" his personal property and legal books. He states that his cell has been "shook down (5) times" and that Defendant Coombs told him "to drop that lawsuit or this will continue to happen." Plaintiff alleges that during these "shake-

12

downs," Defendant Coombs and other officers would stay in his cell from 45 minutes to one hour. He further alleges that Defendant Coombs threw away legal books, legal documents, grievances, photos of his daughter and grandfather, and letters from his family. Plaintiff also alleges that Defendant Coombs "planted a knife on [him] and said he found it on me and he did not."

### j. Defendant George Hennson

Plaintiff alleges that Defendant George Hennson retaliated against him by not allowing him to use the phone to call his family and by spitting in his food.

Plaintiff also alleges that on August 16, 2014, Defendant Hennson entered his cell with Defendant Heggen and Defendant McLaad and threw away all his legal work, legal books, personal pictures, and letters "out of retaliation" to stop Plaintiff from seeking legal redress by filing grievances and lawsuits.

### k. Defendant Cody Edmonds

Plaintiff alleges that Defendant Edmonds "grabbed his right arm in a vice grip trying to intimidate me, told me shut my mouth, while applying force to my arm. This went on for 45 minutes to an hour." Plaintiff alleges that during this incident Defendant Edmonds told him to "drop the case on [Defendant] Bower."

### l. Defendant Lucas Frailex

Plaintiff alleges that Defendant Frailex "shook my cell down for 45 minutes and took . . . my legal books, he also threatened me about writing grievances on staff" and "to drop the lawsuit against [Defendant] Bower."[4]

---

[4] In his amended complaint, Plaintiff also makes allegations against a "Sgt. Peedee." He alleges that Sgt. Peedee cursed at him and told him "to rot in 7 c/h." Although Plaintiff has not named Sgt. Peedee as a defendant in this action, the Court notes that, even if he had done so, these allegations would fail to provide the basis for a claim against Sgt. Peedee.

13

### m. Defendant Captain Cranor

Plaintiff alleges that Defendant Cranor and Defendant Belt told Defendant Von Dwingelo to take his clothes, mattress, and property and leave him in a cell with only concrete and his boxers. Plaintiff alleges that this cell had a vent that was blowing cold air and that he got sick as a result of these conditions.

### n. Defendant Tami Darnell

Plaintiff alleges that during his proceedings before the adjustment committee regarding the "false report" made about him being involved in a sexual act with another inmate, Defendant Darnell "trumped up the statement I made to convict me."

### o. Defendant Danny Heggen

Plaintiff alleges that on August 16, 2014, Defendant Heggen entered his cell with Defendant McLaad and Defendant Hennson and threw away all his legal work, legal books, personal pictures, and letters "out of retaliation" to stop Plaintiff from seeking legal redress by filing grievances and lawsuits.[5]

### p. Defendant Mitchell McLaad

Plaintiff also alleges that on August 16, 2014, Defendant McLaad entered his cell with Defendant Heggen and Defendant Hennson and threw away all his legal work, legal books, personal pictures, and letters "out of retaliation" to stop Plaintiff from seeking legal redress by filing grievances and lawsuits.

---

[5] Plaintiff also alleges that Defendant Heggen violated the Prison Rape Elimination Act (PREA) protocol. It is not clear if Plaintiff is attempting to bring a claim based upon this allegation, but because there is no private cause of action under PREA, any such a claim would fail. *See, e.g., Montgomery v. Harper*, No. 5:14CV-P38-R, at *3 (W.D. Ky. Aug. 19, 2014).

14

### 3. Excessive Use of Force Claims

In his second amended complaint, Plaintiff states in the conclusion that he is also bringing an excessive force claim.

Under the Eighth Amendment, officials' conduct will be found to amount to cruel and unusual punishment "when their offending conduct reflects an unnecessary and wanton infliction of pain." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). In examining an excessive-force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring the court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted [is] sufficiently serious." *Cordell*, 759 F.3d at 580 (internal quotation marks and citations omitted).

Based upon the allegations set forth above, the Court will allow this claim to proceed against Defendants Belt, Coombs, and Edmonds.

### B. STATE-LAW CLAIM

Plaintiff states that on August 1, 2014, he received his monthly financial statement for July 2014. He said the statement showed that, at the beginning of the month, he had $1,114.99 and that, at the end of the month, he only had $ 0.04. He alleges that this statement also shows that he had "no activity" for the month. According to Plaintiff, this term means that he had not spent any money in July. Plaintiff states that he wrote Defendant Gibbs "in inmate accounts" and she told him that she would fix the error, but the money was never placed back in his account. Plaintiff also seems to suggest that he made an open records request for documents

15

related to this incident so that he would have the information he needed to file a claim. Thus, the Court constues Plaintiff's complaint as making a claim for state-law conversion.

Conversion is the "wrongful exercise of dominion and control over property of another." *State Auto. Mut. Ins. Co. v. Chrysler Creditor Corp.*, 792 S.W.2d 626, 627 (Ky. Ct. App. 1990). More specifically, the Kentucky Supreme Court has held that a plaintiff must prove the following seven elements to establish a claim for conversion under Kentucky law:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005); *see also Meade v. Richardson Fuel, Inc.*, 166 S.W.3d 55, 58 (Ky. Ct. App. 2005).

The Court will allow this claim to go forward against Defendant Lisa Gibbs.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's motion to file a supplemental complaint (DN 10) is **GRANTED** and that Plaintiff's motion to file an amended complaint (DN 12) is **GRANTED** in part and **DENIED** in part.

The Clerk of Court is **DIRECTED** to add Lisa Gibbs, Captain Cranor, Tami Darnell, Danny Heggen, and Mitchell McLaad to the caption as Defendants to this action.

**IT IS FURTHER ORDERED** that the official-capacity claims against all Defendants for monetary damages and all claims against Defendant Warden Randy White are **DISMISSED** pursuant 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Clerk of Court is **DIRECTED** to terminate Defendant White as a party to this action.

The Clerk of Court is further **DIRECTED** to send Garfield Evans, an inmate at KSP, a 42 U.S.C. § 1983 packet.

A separate Scheduling Order will be entered to govern the continuing claims.

Date:

cc: Plaintiff, *pro se*
Inmate Garfield Evans, KSP (w/ § 1983 packet)
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.011