UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

MICHAEL COOPER                                                      PLAINTIFF

v.                                              CIVIL ACTION NO. 5:15-CV-P249-TBR

SOJNIA BOWER *et al.*                                               DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion for a preliminary injunction (DN 11) filed

by Plaintiff Michael Cooper, a convicted prisoner currently incarcerated at Kentucky State

Penitentiary (KSP).  Fully briefed, this matter is ripe for decision.  For the following reasons,

Plaintiff's motion will be denied.

## I. PROCEDURAL HISTORY

On December 18, 2015, Plaintiff initiated this *pro se* 42 U.S.C. § 1983 prisoner civil

rights action.  On April 4, 2016, Plaintiff filed an amended complaint (DN 10) and the motion for

a preliminary injunction that is now before Court (DN 11).[1]  On May 11, 2016, Defendants filed

their response to Plaintiff's motion (DN 16).  Defendants' response cited only to general case

law and did not contain any evidence refuting Plaintiff's allegations regarding his treatment at

KSP or provide any information or evidence which would help this Court determine whether a

hearing was necessary.  On June 13, 2016, the Court entered a Memorandum and Order directing

Defendants to file a more detailed response to Plaintiff's motion for a preliminary injunction

(DN 22).  Defendants filed their second response on June 24, 2016 (DN 27), and Plaintiff filed

his reply on July 7, 2016 (DN 33).  The Court then entered a Memorandum and Order on

---

[1] This pleading also contained a motion for a temporary injunction which the Court denied by Memorandum and
Order entered on April 27, 2016 (DN 15).

July 21, 2016, directing Plaintiff to file a supplement to his motion for a preliminary injunction so that he could clarify certain issues related to his mental health and medical treatment claims (DN 34). This Order directed Defendants to file a response to this supplement within 14 days of service. On July 29, 2016, Plaintiff filed the supplement to his motion (DN 37). Defendants, however, never responded. Thus, on September 16, 2016, the Court entered an Order directing Defendants to file a response to this supplement (DN 45). Defendants filed their response on September 30, 2016 (DN 54), and Plaintiff filed his reply on October 11, 2016 (DN 59).

## II. SUMMARY OF MOTION

In his motion for a preliminary injunction, Plaintiff states that he was placed in "7 c/h" in retaliation for filing this action and was told he would "rot there" if he did not "drop this lawsuit." He also states that he was retaliated against by being separated from an inmate to whom he was providing legal assistance. Plaintiff asks the Court to grant relief so that he and this other inmate[2] can get out of segregation and be placed "together," have access to their legal materials and mail, and receive mental health and medical treatment. The Court also notes that in Plaintiff's first amended complaint (DN 10), he specifically states that, since he has been placed in "7 c/h," he has been taken off his psychological and back and shoulder medications.

## III. LEGAL STANDARD

The Court must balance four factors in deciding whether to issue a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether

---

[2] To the extent that Plaintiff seeks to bring this action on behalf of Garfield Evans, another inmate at KSP, the Court again advises Plaintiff he is not permitted to represent anyone but himself in this action or bring claims on behalf of Mr. Evans. Under 28 U.S.C. § 1654, "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ." The statute, however, "does not permit plaintiffs to appear *pro se* where interests other than their own are at stake." *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002); *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) ("[I]n federal court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer."); *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (advising that § 1654 "does not allow for unlicensed laymen to represent anyone else other than themselves") (citation omitted).

the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emples. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (internal quotation marks omitted). The four preliminary injunction factors are "'factors to be balanced, not prerequisites that must be met.'" *Michael v. Futhey*, No. 08-3932, 2009 U.S. App. LEXIS 28217, at *93-94 (6th Cir. Dec. 22, 2009) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 400 (6th Cir. 1997)). Nonetheless, it remains that the hallmark of injunctive relief is a likelihood of irreparable harm. *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) ("[T]he demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction."); *see also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22-23 (2008) (rejecting the notion that a mere "possibility" of irreparable injury was sufficient for a preliminary injunction and holding that "plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is *likely* in the absence of an injunction") (emphasis added in the original). Additionally, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

Plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and his burden is a heavy one. Injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Layette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th. Cir. 2002); *see also Winter*, 555 U.S. at 24. Indeed, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Further, where a

prison inmate seeks an order enjoining state prison officials, this Court is required to proceed

with the utmost care and must be cognizant of the unique nature of the prison setting. *See*

*Kendrick v. Bland*, 740 F.2d 432, 438, n.3 (6th Cir. 1984).

## IV. ANALYSIS

### A.  INJUNCTION REGARDING RELEASE FROM SEGREGATION

The first form of injunctive relief that Plaintiff seeks is release from segregation.

Plaintiff alleges that he was placed in cell house "7 c/h" in retaliation for filing this action and

was told he would "rot there" if he did not "drop this lawsuit."  Plaintiff seems to point to two

specific disciplinary incidents which occurred after he filed this lawsuit and which resulted in his

placement in segregation.  The first incident Plaintiff identifies occurred on December 22, 2015,

five days after Plaintiff filed this action, and the second incident occurred on February 2, 2016.

In their response to Plaintiff's motion for a preliminary injunction, Defendants attach Plaintiff's

disciplinary records.

Retaliation based upon a prisoner's exercise of his constitutional rights violates the

Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set

forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in

protected conduct; (2) an adverse action was taken against him that would deter a person of

ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at

least in part, by the protected conduct. *Id*.

With regard to the first incident, Plaintiff's disciplinary records show that he was found

guilty of engaging in inappropriate sexual behavior (masturbating in front of Defendant Bower)

on December 28, 2015.  (DN 27-3, Disciplinary Records, pp. 1-3)  Following Plaintiff's hearing

on this charge, the Adjustment Committee found him guilty and sentenced him to 45 days in

4

disciplinary segregation.  The records indicate that Plaintiff did not appeal the decision of the Adjustment Committee.

Plaintiff also seems to indicate that a write-up he received on February 2, 2016, was also filed in retaliation for his filing of this lawsuit.  (DN 27-3, Disciplinary Records, pp. 5-7).  On this date, Plaintiff was charged with "possession or promoting of dangerous contraband" after a correctional officer saw him give a six-inch knife to another correctional officer.  Plaintiff argued that he was simply turning in a knife that had been handed to him by another inmate and that he had turned in contraband on previous occasions without consequence.  The Warden ultimately determined that Plaintiff's penalty would be "45 days revoked from suspended date 1-5-16."

Although not mentioned by Plaintiff, the Court notes that following these two incidents, on February 5, 2016, Plaintiff was charged with "disrespectful language/gestures/actions towards a non-inmate."  (DN 27-3, Disciplinary Records, pp. 8-10).  Plaintiff was found guilty of this charge after he admitted asking a correctional officer whether he wanted Plaintiff to put his penis on the tray slot.  Plaintiff received a penalty of 15 days in segregation and did not appeal this decision.  In addition, on April 30, 2016, Plaintiff was charged with "indecent exposure" for masturbating in front of a female correctional officer.  (DN 27-3, Disciplinary Records, pp. 14-17).  Plaintiff pled guilty to this charge and was sentenced to 45 days in restrictive housing as a result of this incident.  Then, on May 14, 2016, Plaintiff was charged with "pursuing a relationship with a non-inmate" after he wrote a letter to a KSP nurse confessing his love for her and his desire to be with her.  (DN 27-3, Disciplinary Records, pp. 18-20).  Plaintiff also pled guilty to this charge and was sentenced to 45 days in segregation.

Applying these facts, the Court first looks to Plaintiff's likelihood of success on these retaliation claims.  The Court notes that the filing of non-frivolous grievances and lawsuits are

protected activities under the First Amendment. *See, e.g.*, *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005) (citing *Thaddeus-X*, 175 F.3d at 391). The Court also recognizes that the filing of misconduct charges may constitute an adverse action. *King v. Zamiara,* 150 F. App'x 485, 493-94 (6th Cir. 2005). However, based upon records discussed, it is unlikely that Plaintiff will succeed on the merits of his retaliatory misconduct charge claims with regard to causation. *See, e.g.*, *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) ("A finding of guilt on a misconduct charge based on some evidence of a violation of prison rules essentially checkmates a retaliation claim."); *Wilson v. Wellman*, No. 99-2377, 2000 U.S. App. LEXIS 31934, at *2 (6th Cir. Dec. 6, 2000) ("[P]rison officials' conclusions that [the plaintiff] was guilty of the underlying misconduct charge satisfies defendants' burden of showing that they would have brought charges against him even if [the plaintiff] had not filed his grievances and complaints."); *Brown v. Warden*, No. 2:10-cv-822, 2012 U.S. Dist. LEXIS 115045, at 54-55 (S.D. Ohio Aug. 15, 2012) (granting summary judgment to defendants on retaliation claim because they submitted "uncontroverted evidence showing that they would have taken the same action" even if plaintiff had not engaged in the protected activity). However, even if Plaintiff could eventually succeed on these claims, he cannot show that irreparable harm will ensue if the Court does not grant him an injunction because he is apparently now in segregation, not for the two misconduct charges he claims were retaliatory, but for subsequent charges filed against him to which he pled guilty.

In addition, to the extent that Plaintiff claims he was separated from another inmate for helping him file grievances and seeks to be placed near that inmate again, it appears that Plaintiff is also unlikely to prevail on this claim. First, the Court recognizes that assisting another inmate with filing a grievance *may* constitute protected conduct under the First Amendment. *See, e.g.*, *Thaddeus-X*, 175 F.3d. at 395. The Court also recognizes that transfers to different cells can

constitute an adverse action in "extraordinary circumstances."  *See, e.g.*, *Lafountain v. Harry*, 716 F.3d. 944, 949 (6th Cir. 2013) (holding that forcing a prisoner to cell with a mentally ill prisoner who presented foreseeable risks constituted an adverse action); *Thomas v. Petzing*, No. 3:10-cv-00608-HDM-VPC, 2011 U.S. Dist. LEXIS 142845, at *10-11 (D.C. Nev. Sept. 26, 2011) (recognizing that separating plaintiff from inmate to whom he was providing legal assistance could constitute an adverse action).  However, with regard to the element of causation, Defendants contend that Plaintiff and the other inmate were separated, not as part of a scheme of retaliation, but because they were found guilty of having oral sex with one another.  This argument is supported by Plaintiff's disciplinary record from November 23, 2014.  (DN 27-2, Disciplinary Report).  In addition, Plaintiff has not established that irreparable injury will result if the Court does not issue an injunction ordering Defendants to place Plaintiff near the other inmate since Plaintiff has presented no evidence suggesting that he is the only individual who can provide legal assistance to this inmate.

Finally, the third and fourth elements also weigh against granting preliminary injunctive relief on the above claims.  It is generally in the best interests of all if courts refrain from becoming involved in day-to-day prison operations.  Moreover, the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest.  *Lang v. Thompson*, No. 5:10-CV-379, 2010 U.S. Dist. LEXIS 126890, at *19 (E. D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context.").

Based upon the above, the Court holds that Plaintiff is not entitled to preliminary injunctive relief on these claims.

### B.  INJUNCTION REGARDING LEGAL MATERIALS

In his motion, Plaintiff also states that when he is "moved and transferred," "Legal Materials, supplies, and papers are unfound."  Plaintiff also claims that because "personal property" within a cell may not exceed five inches, he does not have room to keep the legal materials and supporting documents he needs to pursue this legal action.  Plaintiff states that he "continues to come close to deadline expirations due to having to wait on canteen day to purchase stamps . . . and for staff to deliver correspondence at their convenience to the institutional mail room."

Here, Plaintiff has not proffered evidence showing that he is likely to succeed on this claim or that the alleged actions by Defendants threaten irreparable harm.  Indeed, the Court's records indicate that Plaintiff has filed numerous motions in this action.  Thus, although Plaintiff claims that he is being delayed and/or denied access to the legal and other materials he needs to pursue this action, his claim is undermined by the numerous motions he has filed in this action which demonstrate his consistent ability to submit timely pleadings to the Court that include citation to legal authority.  *See, e.g.*, *Lewis v. Casey,* 518 U.S. 343, 356 (1996) (explaining that no actual injury occurs without a showing that a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented").

In addition, for the reasons set forth in the prior section, the third and fourth elements also weigh against granting preliminary injunctive relief on this claim.

For these reasons, the Court finds that preliminary injunctive relief is not warranted on this claim.

### C.  INJUNCTION REGARDING MEDICAL TREATMENT

Finally, Plaintiff seeks an injunction requiring Defendants to provide him access to mental health and medical treatment.  Plaintiff claims that since he was placed in segregation, he has been taken off of his "physc" medication and back and shoulder medication.  In response to Plaintiff's motion, Defendants attached a portion of Plaintiff's medical and mental health records (DN 55, Sealed Document).[3]

Plaintiff's medical records reflect that he has been prescribed medications for various mental health disorders since at least October 22, 2015.  These records also show that Plaintiff was seen by an outside mental health provider on June 21, 2016, and that his dosage for at least one of these mental health medications was increased on this date.  These records further reflect that Plaintiff was counseled that one of the reasons he may be experiencing certain symptoms was because he was not taking his medication as directed.  Plaintiff's medical records further show that he was seen for a physical examination on July 14, 2016.  On this occasion, he was prescribed 800 mg ibuprofen for his back pain and was told that this was the highest possible dosage of this medication that he could receive.  On August 8, 2016, Plaintiff received another mental health assessment after he filed a PREA complaint which indicated that his "appearance/bx/mood/cognitions [were] all within normal limits" and that Plaintiff was in no "current acute distress."  Plaintiff received another mental health assessment on August 18, 2016, which yielded the same results.  Plaintiff's medical records also show that he was seen on August 19, 2016, after complaining of chest pains and nausea.  As a result of this examination, Plaintiff received an echocardiogram and was placed on a clear diet for 24 hours to rule out indigestion.  On August 22, 2016, Plaintiff was again seen by a mental health provider.  During

---

[3] Plaintiff maintains that he has not seen these medical records.  However, he does not state why he cannot request them through discovery.  If he does so and Defendants do not produce them, Plaintiff can file a motion to compel.

this evaluation, the provider noted that Plaintiff expressed his desire for a transfer so that he could be with his "significant other."  The provider also noted that Plaintiff did not "appear to be experiencing significant MH issues."  On August 30, 2016, Plaintiff was seen for his annual physical, but that the visit was terminated after he "exposed himself" to the healthcare provider who was going to take his vital signs.  Finally, the medical records submitted by Defendants show that on September 6, 2016,  Plaintiff was again seen by an outside mental health provider and, based upon his reported symptoms, the dosage of one his medications was again increased.

Based upon these records, which show that Plaintiff has recently and regularly been seen for both his physical and mental health concerns, the Court concludes that Plaintiff's request for injunctive relief to receive medical and mental health treatment is moot and must be denied.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's motion for a preliminary injunction (DN 11) is **DENIED**.

Date:

cc:  Plaintiff, *pro se*
     Counsel of Record
4413.011