UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:15-CV-249-TBR

MICHAEL COOPER,                                                          PLAINTIFF

v.

SOJNIA BOWER, et. al.,                                                   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon four motions: first, Plaintiff Michael Cooper ("Plaintiff") has filed a Motion to Appoint Counsel. [DN 177.] Second, Plaintiff has filed a Motion to Alter or Amend this Court's Memorandum Opinion and Order granting in part and denying in part Defendants' Motion for Summary Judgment. [DN 178.] Third, Plaintiff has filed a Motion to Alter or Amend this Court's Memorandum Opinion and Order denying Plaintiff's Motion for Partial Summary Judgment. [DN 183.] Finally, Defendants have filed a Motion for an Extension of Time to file a Response to another motion filed by Plaintiff. [DN 187.] The merits of these motions are discussed below.

**I. Factual Background**

Plaintiff is an inmate currently incarcerated at the Kentucky State Penitentiary ("KSP"). From December 2015 to September 2016, Plaintiff filed a Complaint [DN 1] and six Amended Complaints. [DN 10, 12, 32, 38, 39, 52.] In his initial Complaint, filed December 18, 2015, Plaintiff initiated a *pro se* 42 U.S.C. § 1983 prisoner civil rights action. [DN 1.] Throughout his additional filings, Plaintiff has alleged that various Defendants violated his right to bodily privacy, contravening the Fourth Amendment; that Defendants engaged in retaliatory conduct in violation of the First Amendment in response to Plaintiff's alleged protected activities; that

1

Defendants utilized excessive force against Plaintiff and subjected him to cruel and unusual punishment, thereby violating his Eighth Amendment rights; that Defendants unlawfully interfered with Plaintiff's legal mail at KSP; and that certain money Plaintiff had in his personal prison account was unlawfully converted by Defendants. Some of Plaintiff's claims were dismissed upon Defendants' Motion for Summary Judgment. [*See* DN 174.]

## II. Plaintiff's Motion to Appoint Counsel

The first Motion at issue is Plaintiff's Motion to Appoint Counsel. [DN 177.] Pursuant to 28 U.S.C. § 1915(e)(1), in proceedings *in forma pauperis*, "[t]he court may request an attorney to represent any person unable to afford counsel." Importantly though, "[t]he appointment of counsel in a civil proceeding is not a constitutional right and is justified only in *exceptional circumstances*." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (emphasis added). When considering whether such "exceptional circumstances exist, courts typically consider 'the type of case and the ability of the plaintiff to represent himself.'" *Id.* (quoting *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987) and *Poindexter v. Federal Bureau of Investigation*, 737 F.2d 1173, 1185 (D.C. Cir. 1984)). "This generally involves a determination of the 'complexity of the factual and legal issues involved.'" *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993) (quoting *Cookish v. Cunningham*, 787 F.2d 1, 3 (1st Cir. 1986)).

In support of his contention that counsel should be appointed to him in this case, Plaintiff argues the following points: first, that he is unable to afford counsel; second, that his placement in segregation "will greatly limit his ability to litigate…the issues involved in this case[, which] are complex, and will require significant research and investigation." Next, Plaintiff argues that a trial in this case would involve "conflicting testimony, and counsel would better enable plaintiff to present evidence and cross examine witnesses." Plaintiff further argues that the Court should

2

appoint counsel because "Plaintiff is not fully [equipped] to present an[] argument and has never done [a trial] in a civil court case," and that he has previously attempted to obtain a lawyer, a request which was denied. [*See* DN 177, at 1-2.]

With respect to Plaintiff's first argument, the fact that he is financially incapable of paying for counsel does not entitle him to representation in a civil case. As explained above, Plaintiff's right to representation is not constitutionally guaranteed in civil actions, *see Lanier*, 332 F.3d at 1006, and his economic circumstances, although certainly unfortunate, do not constitute the type of exceptional circumstances contemplated by the statute. Next, with respect to his placement in segregation, the Court does not find this to be an exceptional circumstance either. Indeed, in considering the previous filings in this case, Plaintiff appears to have been in segregation for much of the life of this case, which was commenced on December 18, 2015. It is unclear whether he has remained in segregation uninterrupted this entire time, but there are repeated references to his being placed in segregation both before and during this case.

Plaintiff's third argument is unpersuasive. Virtually every case, whether criminal or civil, includes conflicting testimony, and virtually every trial involves the cross-examination of one or more witnesses. The Court is sensitive to the fact that Plaintiff worries he will not be able to effectively conduct examinations of witnesses, but such a commonplace occurrence in the life of every trial cannot constitute exceptional circumstances. The same rationale holds true for Plaintiff's fourth argument that he has never proceeded to trial in a civil action before. Such a commonplace occurrence, standing alone, cannot be grounds for the appointment of counsel in a civil action such as this. Finally, the fact that Plaintiff has previously sought counsel does not bear upon the analysis of whether exceptional circumstances exist, such that the Court would appoint counsel to Plaintiff.

As an additional matter, the Court finds the claims involved in this case to be relatively straightforward: currently, Plaintiff has First Amendment Retaliation claims against nine current or former employees of KSP, and has demonstrated in his pleadings, motions, and other filings with this Court a relatively extensive knowledge and understanding of these claims and the relevant case law. Plaintiff also has an Eighth Amendment Excessive-Use-of-Force claim against three KSP employees, which arise from one simple set of facts, of which the Plaintiff has demonstrated he possesses sufficient knowledge. In sum, the nature of the case, coupled with Plaintiff's displayed knowledge of the case and the law, lead this Court to conclude that counsel should not be appointed in this case. Plaintiff's Motion is denied.

### III. Plaintiff's Motions to Alter or Amend Previous Rulings

#### A. Reconsideration of Court's Grant of Partial Summary Judgment for Defendants

The next motion at issue is Plaintiff's Motion [DN 178] to Alter or Amend this Court's previous ruling granting in part and denying in part Defendants' Motion for Summary Judgment. [*See* Memorandum Opinion & Order at DN 174.] Plaintiff purports to proceed under Federal Rule of Civil Procedure 59(e), but because this Court's ruling did not decide all the rights and liabilities of the parties involved, the Court will construe Plaintiff's Motion as one for reconsideration of an interlocutory order pursuant to Rule 54(b). *See Smith v. City of Wyoming*, 821 F.3d 697, 706 (6th Cir. 2016) ("We generally construe filings by *pro se* litigants liberally."). Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised *at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." (emphasis added).

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see also Leelaneu Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 946 (6th Cir. 2004) (explaining that "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."). As the Sixth Circuit instructed in *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009), "courts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." (internal quotation marks omitted).

In this Motion, Plaintiff petitions the Court for reconsideration on three separate claims: this Court's grant of summary judgment (1) in favor of Defendants Randy White and James Beavers on Plaintiff's First Amendment Freedom of Religion claim; (2) in favor of Defendant Marshall Peek on Plaintiff's Interference with Legal Mail claim; and (3) in favor of Defendant Sojnia Bower on Plaintiff's First Amendment Retaliation claim against her. [*See* DN 178.] Plaintiff does not argue that there has been an intervening change of controlling law, but rather, appears to be arguing that a reversal of this Court's decisions on the three above claims is necessary to correct clear error and/or prevent manifest injustice. The Court will address each of Plaintiff's contentions in turn.

First, with respect to Plaintiff's request that this Court reconsider its grant of summary judgment to Defendants White and Beavers on Plaintiff's First Amendment Freedom of Religion claim, this Motion must be denied. As an initial matter, as noted above, Plaintiff does not

contend that there has been an intervening change in controlling law. Additionally, the Court has found no argument in the instant Motion that new evidence has been brought to light justifying reconsideration. Thus, the Court will review Plaintiff's Motion as to this claim for clear error or manifest injustice. Plaintiff's singular argument here is that, pursuant to Kentucky Corrections Policy and Procedure 14.6(II)(C)(7), "Rejected mail" is a category of non-grievable issues. Thus, Defendants' argument, accepted by the Court at the summary judgment phase of this case, that Plaintiff failed to exhaust his administrative remedies with respect to the rejection of the Quran he had mailed to KSP, must be overturned. The Sixth Circuit has held that an inmate "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004). In other words, a plaintiff's claim cannot be "subject to dismissal for failure to exhaust administrative remedies" where the complained-of issue is non-grievable. *Id.* However, even if the Court accepts Plaintiff's argument that the rejection of the Quran Plaintiff ordered falls into the category of "Rejected mail," thereby making it a non-grievable issue, Defendants White and Beavers are entitled to qualified immunity. Therefore, the Court declines to reconsider its previous ruling granting summary judgment on this claim.

Pursuant to the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The question of whether qualified immunity is available to a defendant involves a two-step process: "[f]irst, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred." *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002). Then, "if a violation could be made out on a

favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). In order for a law to be deemed as "clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bell*, 308 F.3d at 602. In other words, "the unlawfulness [of the action] must be apparent." *Id.* "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id.*

Defendants White and Beavers claimed entitlement to qualified immunity at the summary judgment phase, an issue which was fully briefed. However, the Court did not reach the issue of whether they were entitled to it because the Court found that Plaintiff failed to exhaust his administrative remedies with respect to this claim. In light of Plaintiff's argument that the rejection of the Quran constituted a non-grievable issue, though, the Court will reconsider the question of qualified immunity now. Defendant White, the Warden of KSP, implemented a policy requiring inmates to place their own book orders. [DN 137-11, at 4.] This policy requires that "the purchasing inmate shall…have sufficient funds available at the time of purchase," and shall "sign a CPO and process the CPO through their assigned Classification and Treatment Officer." [*Id.*] Beavers was apparently involved in the process whereby Plaintiff was denied access to the Quran at issue, although Plaintiff did not address the Free Exercise claim in his

7

Response to Defendants' Motion for Summary Judgment. [*See* DN 151.] Construed liberally, the Court will assume that Beavers was involved in the process. Importantly though, White's policy did not single out religious texts or otherwise manifest an intent or knowledge of curtailing any inmate's free exercise of religion. Rather, the Memorandum issued by White seems to the Court to have been a directive to ensure that the books coming into KSP were actually purchased by the recipient inmate. The Court cannot say that such a policy was unlawful, or that any unlawfulness would have been readily apparent, either to White or to Beavers, whose direct involvement in this issue remains unclear. Thus, even if the right to receive religious texts in the mail was a clearly established one for purposes of qualified immunity, Plaintiff's claim would still fail on prong one.

Moreover, Plaintiff has not alleged that White or Beavers "had fair notice that [their] conduct was unlawful," nor has Plaintiff argued or otherwise shown that "the law at the time" of Defendants' actions "clearly establish[ed] that the [Defendants'] conduct would violate the Constitution…." *See Brosseau*, 543 U.S. at 198. And it is axiomatic that, "[o]nce [an] official[] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.'" *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). Plaintiff not only failed to carry his burden of showing that White and Beavers were not entitled to qualified immunity on this claim, he did not even mention this claim at all in his Response to Defendants' Motion for Summary Judgment, let alone present an argument as to why these two Defendants are not entitled to qualified immunity. [*See* DN 151.] The Court finds that Plaintiff has failed to carry his burden, and therefore declines to reconsider the grant of summary judgment to White and Beavers on this claim. Plaintiff's Motion is denied on this count.

Next, Plaintiff asks this Court to reconsider its grant of summary judgment in favor of Defendant Peek with respect to Plaintiff's Interference with Legal Mail claim. In support of this contention, Plaintiff cites to the Supreme Court's decision in *Booth v. Churner*, 532 U.S. 731 (2001), although the passage he quotes comes not from that case but from another Supreme Court case, *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). There, the Supreme Court detailed what exactly constitutes "available" or "availability" under the exhaustion-of-available-remedies analysis, before an inmate may file an action in federal court. *Id.* ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of.") (internal quotation marks and citations omitted). Plaintiff's argument is that the actions of KSP officials run afoul of the third variation of "unavailability" under *Ross*, wherein the Supreme Court noted that administrative remedies are unavailable to inmates "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* Expounding on this, the Supreme Court in *Woodford v. Ngo*, 548 U.S. 81, 102 (2006), "recognized that officials might devise procedural systems (including the blind alleys and quagmires…) in order to trip up all but the most skillful prisoners." *Id.* Officials might also "misl[ead] or threaten[] individual inmates so as to prevent their use of otherwise proper procedures." *Id.*

In the present action, Plaintiff only presents unfounded and uncorroborated accusations that Defendants "have strategically added, removed and changed attorneys in the form of machination, misrepresentation and thwart [sic]." [DN 178, at 3.] Plaintiff also alleges that Defendants "have figured a strategy [sic] to thwart Plaintiff and deprive Plaintiff from accessing relevant documentation, i.e., grievances." [*Id.*] Plaintiff goes on to accuse Defendants of intentionally prolonging the discovery period in order to dispose of Plaintiff's old grievances

9

without allowing him access to them. [*Id.*] He does not provide support for these accusations, identify who might have been involved, when this might have occurred, or otherwise provide to the Court any indication that Defendants have done any of the things of which he accuses them. It appears that Plaintiff's instant Motion, as to this claim, is merely an attempt to relitigate an already-decided issue. As the Northern District of Ohio has explained, "motions for reconsideration are granted very sparingly," and "are not substitutes for appeal nor are they vehicles whereby a party may present arguments inexplicably omitted in prior proceedings." *Plaskon Electronic Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N. D. Ohio 1995) (internal quotation marks and citations omitted). Moreover, "[a] motion for reconsideration that merely presents the same issues ruled upon by the Court, either expressly or by reasonable implication, shall be denied." *Savage v. United States*, 102 F. App'x 20, 23 (6th Cir. 2004); *see also Am. Marietta Corp. v. Essroc Cement Corp.*, 59 F. App'x 668, 671 (6th Cir. 2003) ("[A] motion to reconsider should not be used to re-litigate issues previously considered."). As such, Plaintiff's Motion must be denied as to this claim.

Finally, Plaintiff asks this Court to reconsider its dismissal of his claims against former Defendant Bower. Plaintiff previously brought two claims against Bower: one for an invasion of his bodily privacy under the Fourth Amendment, and another for First Amendment Retaliation. Although Plaintiff lists the Fourth Amendment bodily privacy claim in this motion, he does not discuss it or otherwise provide any argument as to why the Court's previous ruling was clear error or why it should be reversed to prevent manifest injustice. As such, the Court declines to address that issue. With respect to Plaintiff's claim that the Court should reconsider its decision to dismiss Plaintiff's First Amendment Retaliation claim against Bower, Plaintiff argues that he "has shown retaliation for filing grievances" after merely restating his argument from previous

filings with the Court. [*See* DN 178, at 4.] As stated above, a motion for reconsideration is not the place for a litigant to re-hash old arguments already ruled on by the Court. *See Savage*, 102 F. App'x at 23. Plaintiff has produced no new evidence, and merely uses old allegations and averments already reviewed by the Court to argue that this Court erred in granting summary judgment in favor of Bower. In short, Plaintiff's argument does not meet any of the previously-articulated standards for a court to reconsider a previous ruling, and the Court will deny this claim as well.

**B. Reconsideration of Court's Denial of Plaintiff's Motion for Partial Summary Judgment**

Plaintiff has also moved this Court to reconsider its previous rulings denying his Motion for Partial Summary Judgment, his Motion for Leave to Seal Document, and his Motion to Compel. [DN 183.] In a previous Memorandum Opinion & Order, this Court dismissed as moot Plaintiff's Motion for Partial Summary Judgment as to some claims and denied the balance. [*See* Memorandum Opinion & Order at DN 175.] The Court also denied Plaintiff's Motion for Leave to Seal Document and his Motion to Compel. [*Id.*] Today, the Court affirms these decisions.

First, with respect to Plaintiff's Motion for Leave to Seal Document, [DN 162], Plaintiff presents no new arguments. As explained above, motions for reconsideration should only be granted by the district court in three situations: where there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Hotels.com, L.P.*, 590 F.3d at 389 (internal quotation marks omitted). Plaintiff does not contend that the law has changed, nor does he present any new evidence. Instead, Plaintiff appears to accuse Defendants of transferring Garfield Evans, a former inmate at KSP mentioned in the document in question, in order to undermine Plaintiff's trial strategy. [*See* DN 183, at 2.] He goes on, without supporting evidence, to suggest that various Defendants lied

and said Plaintiff raped Evans when it was actually a consensual encounter. The Court will not relitigate this issue. The fact remains that the document Plaintiff wishes to have sealed had been in the public record since June 24, 2016 when Plaintiff moved to have it sealed on August 31, 2017. [*See* DN 27-2, DN 161.] The Court saw no compelling reason at the time to seal the document after one and a half years, and further found that it did not "work a clearly defined and serious injury." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 307-08 (6th Cir. 2016). Now, the Court declines to overturn its previous decision. Plaintiff's only argument rests on unfounded accusations.

Next, the Court will address Plaintiff's request to reconsider its denial of his Motion to Compel with respect to certain security camera footage. The video to which Plaintiff refers was the subject of debate in yet another previous motion filed by Plaintiff. [DN 160.] There, he argued that Defendants had not complied with this Court's discovery schedule with respect to, among another issue, permitting Plaintiff to view this security camera footage. Defendants submitted to the Court that Plaintiff *had* been permitted to watch the footage, under supervision, but was only allowed to watch a portion of it because it became pornographic after a short time. [DN 159.] Defendants also submitted the affidavit of Will Simpson, the caseworker for 7-cell-house, wherein Simpson avers that Plaintiff viewed this video, but this viewing was cut short because KSP policy prohibits inmates from viewing pornographic materials. [*Id.*] Simpson also indicated that Plaintiff "refused to sign an acknowledgement form" indicating that he had seen the video "because he felt he was entitled to view additional video." [*Id.*] A notary public also executed Simpson's affidavit, which states "Refuse to sign" on it, referring to Plaintiff's refusal. [*Id.*] Plaintiff denies he ever viewed the video, while Defendants proffered convincing evidence that Plaintiff viewed the video, but simply did not see as much of it as he wanted to. This was

due to KSP's policy against allowing inmates to view pornographic materials. Defendants complied with this Court's discovery schedule as well as KSP policies and the Court declines to allow Plaintiff another opportunity to view the footage.

Next, Plaintiff asks this Court to reconsider its decision to dismiss as moot his Motion for Summary Judgment as to former Defendants Lisa Gibbs, Tami Bauer, Marshall Peek and Skyla Grief. In Section III(A) of this Memorandum Opinion & Order, the Court declined to reconsider and overturn its grant of summary judgment to Peek on Plaintiff's Interference with Legal Mail claim. Here, Plaintiff's argument mirrors that of his initial Motion for Partial Summary Judgment: "Marshall Peek keeps telling me to leave my legal mail open so he can seal [it]." [DN 183, at 2.] Plaintiff does *not* argue, however, that he exhausted his administrative remedies with respect to this claim. Non-exhaustion was the basis for this Court's grant of summary judgment in favor of Peek on this claim. [*See* DN 174, at 26-28.] Plaintiff's attempts to relitigate this claim must fail. *See Savage*, 102 F. App'x at 23.

The same holds true for Plaintiff's requests for reconsideration as to his previous claims against Gibbs, Bauer and Grief. Plaintiff claims that Gibbs, an accountant at KSP, converted over $1,000 from his inmate account between July and August 2014. Defendants' Motion for Summary Judgment contained account summaries of Plaintiff's inmate account which showed a balance of $0.04 on June 17, 2014 and a balance of $10.04 on August 12, 2014. [DN 137-54, at 2.] This Court held that Plaintiff had not produced more than a scintilla of evidence that Gibbs converted over $1,000 from his account, or that his account ever held such a sum. [*See* DN 174, at 22-23.] Now, in his Motion for Reconsideration, the only argument Plaintiff makes with respect to Gibbs is that she allegedly told him that the account discrepancy was a "mistake on her behalf and that [there] were [errors] on 1 statement[]." [DN 183, at 2.] He does not support this

13

contention with any evidence, nor does he present any evidence which would lead this Court to deem its previous decision to grant summary judgment to Gibbs clear error requiring reversal to avoid manifest injustice. The Court declines to reconsider this decision. Regarding Bauer and Grief, Plaintiff again claims, as he has in previous filings, that charges were "trumped up" against him with respect to a disciplinary hearing and decision regarding Plaintiff's sexual encounter with another inmate in order to retaliate against him. This issue was already analyzed by the Court in depth in its previous ruling granting in part and denying in part summary judgment to Defendants. [*See* Memorandum Opinion & Order at DN 174.] Plaintiff presents no new evidence or arguments and the Court declines to reconsider its ruling.

### IV. Defendants' Motion for an Extension of Time

The next Motion at issue is Defendants' Motion for an Extension of Time. [DN 187.] The time has passed for Plaintiff to file a Response. Being sufficiently advised, the Court will grant Defendants' Motion. Defendants' Motion asks for additional time to respond to one of Plaintiff's motions, docketed at no. 179. In this filing, Plaintiff has moved (1) for interrogatories, (2) for the production videos and to supplement, (3) to supplement his complaint, and (4) to amend his complaint to add more defendants. [DN 179.] Due to the complexity of the issues presented by Plaintiff's Motion, the Court will grant the extension. Defendants will have **21 days from the filing of this Memorandum Opinion & Order** to respond, and Plaintiff will have 14 days thereafter to reply.

### V. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion to Appoint Counsel [DN 177] is **DENIED.**

2. Plaintiff's Motion to Alter/Amend [DN 178] the Court's previous ruling granting in part and denying in part Defendants' Motion for Summary Judgment is **DENIED.**

3. Plaintiff's Motion to Alter/Amend [DN 183] the Court's previous ruling denying Plaintiff's Motion to Compel, Motion for Partial Summary Judgment, and Motion to Seal document is **DENIED.**

4. Defendants' Motion for an Extension of Time [DN 187] is **GRANTED.** Defendants will have **21 days from the filing of this Memorandum Opinion & Order** to respond, and Plaintiff will have 14 days thereafter to reply.

**IT IS SO ORDERED.**

cc: Michael Cooper, #211158, *Pro se* Plaintiff
Kentucky State Penitentiary
266 Water St.
Eddyville, KY 42038

cc: Counsel of record