UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:15-CV-249-TBR

MICHAEL COOPER,                                                                                    PLAINTIFF

v.

SOJNIA BOWER, et al.,                                                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon multiple motions by Plaintiff Michael Cooper. First, he has filed a motion styled as a motion for subpoenas. [DN 176.] Second, Plaintiff has filed a motion to compel and to reconsider. [DN 190.] Third, he has filed a second motion to compel. [DN 204.] Fourth, he has filed a third motion to compel. [DN 205.] Fifth, he has filed a motion styled as a "Motion for Clothing for Trial." [DN 209.] Sixth, he has filed a Motion for Documents. [DN 212.] Finally, he has filed a "motion to produce documents for trial and produce documents already requested." [DN 215.] These matters are ripe for adjudication, and their merits are discussed below.

### I. Factual Background

The following factual background summary is taken from this Court's previous Memorandum Opinion and Order in this matter. [DN 198]:

Plaintiff is an inmate currently incarcerated at the Kentucky State Penitentiary ("KSP"). From December 2015 to September 2016, Plaintiff filed a Complaint and three Amended Complaints. [DNs 1, 10, 12, 52.] In his initial Complaint, filed December 18, 2015, Plaintiff initiated a *pro se* 42 U.S.C. § 1983 prisoner civil rights action. [DN 1.] Throughout his additional

filings, Plaintiff has alleged that various Defendants[1] violated his right to bodily privacy, contravening the Fourth Amendment; that Defendants engaged in retaliatory conduct in violation of the First Amendment in response to Plaintiff's alleged protected activities; that Defendants utilized excessive force against Plaintiff and subjected him to cruel and unusual punishment, thereby violating his Eighth Amendment rights; that Defendants unlawfully interfered with Plaintiff's legal mail at KSP; and that certain money Plaintiff had in his personal prison account was unlawfully converted by Defendants. Some of Plaintiff's claims were dismissed upon Defendant's motion for summary judgment. [DN 174.] Plaintiff has filed numerous motions in this case, and the Court's disposition on those motions is laid out below.

## II. Motion for Subpoenas

The first motion at issue is Plaintiff's motion for subpoenas. [DN 176.] Plaintiff requests that the following persons or things be present and/or available at the trial in this matter: (1) Garfield Evans, an individual currently incarcerated at Luther Luckett Correctional Complex; (2) Brandon Bruin, an individual currently incarcerated at KSP; (3) Danny Heggen, an employee at KSP and a Defendant in this action; (4) Shay Carlson, an individual who Plaintiff claims was previously employed at KSP but who now works at Blackburn Correctional Complex; (5) James Beavers, an employee at KSP; (6) Michael Spindler, an employee at KSP; (7) "[a]ll documents plaintiff has [f]iled to the court[] and [e]xhibits;" (8) Allen Franklin, an individual currently incarcerated at KSP; and (9) certain security camera footage taken of Plaintiff and Evans. [*See id.* at 1-3.] The Court held a telephonic status conference in this matter on February 22, 2018, wherein many of these matters were discussed and decided. [*See* DN 200.] Consequently, much of this motion has been rendered moot.

---

[1] The following Defendants remain in the action: Troy Belt, Skyla Grief, Timothy Hawkins, Jesse Coombs, George Henson, Cody Edmonds, Lucas Frailex, Danny Heggen, and Mitchell McLeod.

First, the Court ruled that Defendants are to make available to Plaintiff the aforementioned security camera footage, which Plaintiff previously viewed on August 15, 2017. [*See* DNs 159-1 and 200.] Importantly though, this Court ruled that, consistent with KSP policies, Plaintiff is not entitled to view any of the footage that is pornographic in nature.[2] [DN 200.] Second, the Court ruled that Plaintiff's request for "[a]ll documents plaintiff has [f]iled to the court[] and [e]xhibits" was vague and overbroad and, as such, could not be granted. However, the Court instructed Plaintiff to make a filing with the Court, should he wish to do so, indicating specifically any documents he wishes to be made available for him at trial. [*See* DN 200.] Indeed, in two later motions, analyzed in this Opinion below, Plaintiff has done just that. Thus, these first two requests have been rendered moot by the Court's previous order and are hereby dismissed as such. [*Id.*] Third, with respect to Franklin, Plaintiff indicated to the Court that he no longer wishes to have Franklin present at trial to testify, and so the instant motion is also moot on this point.

Fourth, after discussing with Plaintiff the potential witnesses Bruin, Beavers, and Spindler, the Court concluded that none of these men possess personal knowledge of any of the facts or claims at issue in this case and, consequently, cannot be subpoenaed to testify at the trial in this matter. *See* Fed. R. Evid. 602 (explaining that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Thus, Plaintiff's motion is hereby expressly denied with respect to Bruin, Beavers, and Spindler.

Fifth, the Court held that Carlson could be subpoenaed to testify at the trial in this matter, and ordered a blank subpoena form to be sent to Plaintiff so that he could subpoena Carlson to

---

[2] The Court takes note of the fact that Defendants filed a Notice of Compliance on March 9, 2018, wherein they certify that Plaintiff viewed the video at issue. [*See* DN 223.]

testify, should he choose to do so. Plaintiff was also advised that he was required to tender the appropriate fees inherent in subpoenaing a non-party witness to testify. *See Johnson v. Hubbard*, 698 F.2d 286, 289-90 (6th Cir. 1983), *abrogated on other grounds by L & W Supply Corp. v. Acquity*, 475 F.3d 737 (6th Cir. 2007). Therefore, Plaintiff's motion is granted on this count. Sixth, the Court noted that the witness fees *could* be waived with respect to Evans, as he is currently incarcerated, and the Court indicated that it would issue an order and writ of habeus corpus ad testificandum as to Evans. Therefore, Plaintiff's motion is granted on this count. Finally, Heggen is a Defendant in this case and so will be present at trial. Consequently, there is no need for Plaintiff to subpoena him to testify. He may cross-examine Heggen at trial should he wish to do so. The motion is moot on this point.

### III. Motion to Compel

The second motion at issue is Plaintiff's motion to compel. [DN 190.] In this motion, Plaintiff asks that he be permitted, along with Bruin and Evans, to come to the Court in person, along with various unspecified documents and grievances, in order to argue his case. The Court has already denied Plaintiff's request for similar relief, which this Court framed at that time as a motion to reconsider. [*See* DN 198, at 7-8 (discussing Plaintiff's request to escorted, with witnesses and documents, to the Court to argue his case).]

In essence, Plaintiff's motions for summary judgment and default judgment were both denied by this Court on September 18 and October 11, 2017. [*See* DNs 171, 172, respectively.] And in his motion styled as a "motion to counter strike," Plaintiff asked to be brought to the Court to argue those motions again, along with unspecified documents and witnesses. [DN 194.] The Court denied that motion, framing it as a motion to reconsider. [DN 198.] Now again, Plaintiff asks to be brought before the Court with documents and witnesses (this time identifying

4

the witnesses as Bruin and Evans) to argue his case. It is unclear exactly which issue, motion, or claim Plaintiff wishes to argue before the Court this time, but in any case it is clear that the motion must be denied.

First, if the instant motion pertains to rehashing the arguments already denied on the merits, [DN 171, 172], and upon reconsideration, [DN 198], then the Court will not address it again, as the motion is not properly before the Court as a procedural matter. Second, in the instant motion Plaintiff claims that he "was assaulted by another staff member [on] July 13th," presumably of 2017, and so if this motion is an attempt to be brought before the Court to discuss that matter, the Court must still deny the motion. The July 13, 2017 date was raised by Plaintiff before in a separate motion to reconsider. [*See* Pl. Motion to Reconsider, DN 189, and this Court's denial of that Motion, DN 198.] At that time, Plaintiff claimed that on July 13, 2017, he had been assaulted by unnamed KSP officials. [DN 189, at 2-3.] The Court instructed Plaintiff that while it took such allegations very seriously, "the proper course of action is laid out in KSP's inmate handbook…If, after having exhausted his administrative remedies with respect to any such assault, the issue has not been remedied to Plaintiff's satisfaction, he may seek redress within the court system." [DN 198, at 13.] The Court went on to note that "this case has nothing to do with an alleged assault occurring in 2017, and the time has passed for Plaintiff to amend his Complaint for a fourth time," and so "this case is an inappropriate forum in which to litigate such an issue." [*Id.*] Thus, to the extent Plaintiff wishes to litigate matters that are irrelevant to this case, the Court must deny the motion.

Third, Plaintiff also makes statements in the instant Motion indicating that part of his motive for requesting to be brought before the Court is to "present the grievances that are already in the record, in docket no. 35," and that "once I [Plaintiff] show my exhibits you will grant my

motion for summary judgment & default judgment. Everything is documented in the record." [DN 190, at 2.] The Court has already reviewed the grievances in the record, and if Plaintiff wishes to discuss them further, *i.e.*, in the trial of this matter, he should identify any such grievances in an exhibit list filed in accordance with this Court's pretrial orders. Also, the Court already denied his motion for summary judgment and default judgment, as well as motions to reconsider those decisions. Accordingly, the Court must also deny his motion insofar as it has attempted to accomplish this as well.

### IV. Motion to be Transported to the Courthouse

The next motion at issue is one Plaintiff has styled as follows: "Plaintiff Request[s] a[n] order granting himself and witness Garfield Evans to be brought to the courthouse in Paducah." [DN 204.] Therein, Plaintiff asks, again, for an order from this Court directing prison officials to bring him, along with an individual he plans to call as a witness at trial, Garfield Evans, to the courthouse "to pull certain documents from the docket. Also[,] witness Evans has documents in his posses[sion] that plaintiff cannot attain any other way due to the ongoing violation here at KSP with the mail room." [*Id.* at 1.]

As an initial matter, the Court makes specific note of the fact that it has denied previous requests by Plaintiff for such an order directing that he be brought to the courthouse numerous times now, including earlier in this same Opinion. It will not now change course and issue such an extraordinary order. Plaintiff will be brought to the courthouse on the morning the trial is to commence, and not before. To be sure though, the exact relief Plaintiff seeks in the instant motion varies slightly from that of other similar motions. Specifically, Plaintiff wishes to identify and review certain documents from this case's docket, and also be permitted access to unidentified documents allegedly in the possession of Evans, who is currently incarcerated at a

different institution than Plaintiff. Plaintiff is hereby advised that there is no physical docket wherein hard copies of all filings are kept. The docket is itself electronic and accessed via the internet.

The Court assumes that Plaintiff's desire to review certain documents from the docket is borne out of his previous request that all documents and filings from the docket be made available to him in advance of trial. Relatedly, this Court issued an Order on February 23, 2018 wherein it instructed Plaintiff that, should he wish to have any docket filings made available to him at trial, he should specifically identify them so that the Court may provide such documents to him on April 3, 2018 before trial commences. In the instant motion, Plaintiff has not identified any specific documents, and so the Court will deny this motion in its entirety. He does, however, list specific documents in two separate motions, analyzed by the Court below. Also, with respect to the unidentified documents allegedly in the possession of Evans, if Plaintiff wishes Evans to bring such documents to the courthouse with him when he testifies at trial, he will need to coordinate such efforts himself with Evans. If, at trial, Plaintiff believes one or more of these documents to bear some relevance to the issues of the case, he may move to have the document(s) admitted.

Finally, Plaintiff seeks an order from this Court directing KSP mail room staff "to relinquish my [Plaintiff's] legal books which are" as follows: "the Uniform Commercial Codes 2017-2018 ed.," "Represent yourself in court, 9th ed.," "101 Law Forms for Personal Use, 10th ed.," and "The little black [sic: book] of lawyers wisdom." The Court has no knowledge of these books and is not privy to the precise policies and procedures underlying the Mail Room rules at KSP at it relates to these books. Additionally, the Court has not been made aware of *why* Plaintiff is allegedly being denied access to these books. At any rate, the Court considers this to

be a matter of internal prison policy and directs Plaintiff that, should he wish to retrieve these books, he should follow internal procedures (*i.e.*, file an internal grievance with the prison).

### V. Motion for Video Footage, Legal Books, and Documents

The next motion at issue is Plaintiff's motion styled as a "Request for video footage, legal books, and documents pertaining to this trial also, a request for witnesses and why." [DN 205.] The Court will address each of Plaintiff's requests in turn.

### A. Video Footage

First, Plaintiff requests five different pieces of video footage pertaining to various alleged incidents which took place at KSP from 2013 to 2016 and which involve various Defendants in this action. However, by Order of the Court, all discovery was to be completed in this case no later than April 3, 2017. [DN 64.] Additionally, the trial in this matter is scheduled for April 3, 2018, roughly four weeks after Plaintiff filed this motion. [DN 200.] It is far too late in this case for Plaintiff to now seek such discovery from Defendants on the eve of trial, especially where Plaintiff actually sought as early a trial date as possible. The Court agrees with Defendants' characterization of the issue: "[e]ngaging in additional discovery now would unduly disrupt Defendants' trial preparations." [DN 218, at 1.] *See also Mallory v. Noble Correctional Institute*, 45 F. App'x 463, 468-69 (6th Cir. 2002) (citing *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1114 (6th Cir. 2001) ("Where the full period for pretrial discovery has run its course, a party should generally be precluded from reopening discovery months after it has closed in a last-ditch attempt to salvage a deficient claim or defense."); *see also Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001) (upholding the district court's denial of a motion to reopen discovery where the original discovery period lasted longer than a

year and "Plaintiff waited until less than three months prior to the start of trial to file his motion.").

Plaintiff drafted a letter to the Court, wherein he alleges that he actually requested this footage during discovery, and so is not asking to reopen the discovery period. [*See* DN 219.] Plaintiff has filed numerous motions to compel in this case, *see, e.g.*, DNs 44, 79, 80, 124, 190, but none of these motions dealt with the security camera footage Plaintiff now seeks. In short, there is no evidence to suggest that Plaintiff actually sought for or requested any of this footage at any time during the more-than two-year history of this case, and so the Court is not now inclined to reopen discovery mere weeks before trial.

### B. Documents and Things

Plaintiff also makes requests in the instant motion for certain documents and things [sic throughout]: First, he requests the "x-ray of my back, neck & left should blade." [DN 205, at 2.] Second, Plaintiff requests the "Medical Report of [D]octor Tangalag give Plaintiff a shot to his left shoulder [sic]." [*Id.*] In their Response, Defendants instructed the Court that Plaintiff's medical records were sent to him. [*See* DN 218, at 2 n.1.] Thus, insofar as this x-ray already exists, Plaintiff should be in possession of it. If he is requesting that x-rays be *taken*, this motion must be denied. The same is true of this medical report.

Third, Plaintiff requests a document referred to as a "PREA classification." [*Id.*] The Court is uncertain as to what Plaintiff refers, *i.e.*, whether it is *his* classification he seeks, that of another inmate, or the PREA ("Prison Rape Elimination Act") guidelines for classifications. In short, the request is vague and must be denied.

Fourth, Plaintiff requests the "confidential report reported to a[d]justment committee. A[d]justment committee tape from Dec. 15, 2014." [*Id.*] Again, the Court is uncertain precisely

9

to what Plaintiff is referring, but makes note of the fact that the Adjustment Committee report from that date, and which relates to that occurrence, are filed in the case docket and will be made available to Plaintiff should he wish to review such documents in preparation for trial.

Fifth, Plaintiff requests "Danny Heggen's PREA assesment tape from Michael Cooper and Garfield Evans." [*Id.*] Sixth, Plaintiff requests "[a]ll reports of when Michael Cooper was stripped of [a]ll property and left in a[n] isolation cell." [*Id.*] Seventh, Plaintiff requests the "Medical Report/All Medical Reports and Medicine since 2015 to 2018. PREA Risk Assessment & Uniform Citation from Nathaniel Deboe." [*Id.*] These three requests appear to be attempts by Plaintiff to reopen discovery mere weeks before trial and, as discussed above, the Court is not inclined to permit more discovery in this case. *See Mallory*, 45 F. App'x at 468-69; *see also Perkins*, 246 F.3d at 605.

Eighth, Plaintiff requests thirteen different filings from the case docket. With respect to these documents, the Court notes that *all* of them are filings made by Plaintiff (*i.e.*, a letter, a memorandum of law, a proposed amended complaint, a motion for reconsideration, etc.). Very seldom are documents like these evidentiary in nature. At trial, if and when Plaintiff believes these documents to bear some relevance to the case, he may move the Court to enter them into evidence by specifically identifying them, as well as the grounds for their relevance. In the interim period, the Court will deny this motion as to his document requests. A complete list of the documents requested by Plaintiff, as well as accompanying descriptions, is laid out by the Court in Exhibit 1.

Ninth, Plaintiff requests affidavits from Bruin and Evans. [DN 205, at 3.] This must be denied. The Court already ordered Evans to be present as a witness in this trial and so his

affidavit is not needed. Additionally, it was determined that Bruin has no personal knowledge of the underlying events of this case and so his affidavit will not be allowed.

Tenth, Plaintiff requests a "[p]icture of a 7 [cellhouse] cell & looking out the cell with the [d]oor closed. A picture of [a] 3 [cellhouse] cell, inside and inside looking out. Not Cell 1 on any walk in 3 [cellhouse]." [*Id.*] Eleventh, Plaintiff requests a "[p]icture of the vent in a cell in 7 [cellhouse]. And the observation cell to show the cruel and unusual punishment." [*Id.*] Similar to some of the above requests, this appears to be an attempt by Plaintiff to gain more discovery, and it therefore must be denied.

Twelfth, Plaintiff requests "a shock shield, one [r]iot gear suit, one [t]azer, one dart gun, [a]ll the different cans of [m]ace, [a]nd seg[regation] clothing [f]or an inmate. Pep[per] ball gun." [*Id.*] Due to prison safety concerns, this request must be denied.

Thirteenth, Plaintiff requests "the legal books held in the KSP Mail Room…the Books are Uniform Commercial Code, 2017-2018 ed….Represent yourself in Court, 9th Edition…101 Law Forms For Personal Use, 9th Edition…The Little Black Book of Lawyers Wisdom." [*Id.* at 4.] As explained previously, the KSP Mail Room policy is an internal prison matter that does not bear upon the facts of this case. Plaintiff should seek redress within the grievance process.

### C. Witnesses

Finally, Plaintiff seeks to have additional witnesses present at trial. These witnesses are:

1. Brandon Bruin. This request is dismissed as moot. The Court already determined that Bruin has no personal knowledge of Plaintiff's claims.

2. Skyla Grief. Grief is a Defendant in the case and will be at trial. This request is dismissed as moot.

3. Garfield Evans. The Court already granted Plaintiff's request with respect to Evans and so this is dismissed as moot.

4. Shay Carlson. Carlson was listed in Plaintiff's proposed witness list and the Court directed the Clerk to send Plaintiff a subpoena form for Carlson, as Plaintiff must pay the required fees should he wish to have Carlson there.

The following individuals listed by Plaintiff may not be called as witnesses in the trial: Kareem Edwards, Andre Fant, Jr., Brent Coleman, Jalen Estioko, Curtis Moorman, Earl Wright, Paul Young, Meldrum Harvey, Stephon Tramber, and Stanley Roberts. Plaintiff has not filed a document specifically entitled "Proposed Witness List," but he *did* file a "Motion for Subpoenas," in which he did not list any of these individuals. Moreover, the Court cannot find any references to these individuals anywhere in the case docket as people even tangentially related to the facts of this case. Also, the Court held a telephonic status conference in this matter on February 22, 2018, wherein this Court specifically asked Plaintiff who he wished to call as a witness at trial and he did not name any of these individuals. The Court will not allow any of them to be called as witnesses at trial. The prejudice to Defendants would be great and, further, there is no indication that any of these individuals have personal knowledge of the specific facts of this case.

Finally, there is James Beavers. Plaintiff listed him in his "Motion for Subpoenas" but indicated to the Court that his knowledge was with respect to an alleged assault Plaintiff suffered after the commencement of this lawsuit and which does not pertain to this case in any factual sense. Therefore, Plaintiff's motion is denied as to Beavers.

**VI. Motion for Clothing for Trial**

The next motion at issue is Plaintiff's motion styled as a "Request for clothing for trial/subpoena other inmate witnesses." [DN 209.]

Plaintiff first asks to be dressed differently for trial. The Court will permit Plaintiff to be dressed differently for trial, although not in exactly the manner Plaintiff would prefer. In his motion, he appears to ask for leave of the Court to be dressed in street clothes for the trial. In furtherance of this, Plaintiff requests that he be afforded a telephone call to a family member in order to have such clothes ready for him for trial.

First, the Court is not privy to the policies and procedures whereby individuals who are incarcerated at KSP are afforded access to the telephone in order to call friends and family. Thus, it is hesitant in the first instance to interfere with such policies. However, such an order would be unnecessary in any event, because the Court will not permit Plaintiff to be dressed in street clothes at trial. Rather, as discussed and agreed to in this Court's February 22, 2018 telephonic status conference with both parties, the Court will permit Plaintiff to be dressed in penitentiary-issued khakis and will order KSP officials to make available such an outfit to Plaintiff for trial. Thus, Plaintiff's instant motion is denied, but with the caveat that he will be permitted to wear those penitentiary-issued khakis at trial if he so desires.

The second request for relief in this motion is a list of proposed witnesses which is substantially similar to the one laid out by Plaintiff in another motion filed only three days before this one. Here, Plaintiff reiterates his request that Evans, Bruin, Edwards, Fant, Jr., Estioko, Coleman, Moorman, Young, Harvey, Wright, and Tramber all be called upon as witnesses as trial. The Court already denied Plaintiff's previous motion with respect to this request for relief above. Therefore, Plaintiff's instant motion is dismissed as moot on this point.

**VII. Motion for Documents**

The next motion at issue is one wherein Plaintiff requests that twenty-one filings from the case docket be made available to him at trial. Many of these requested documents are Plaintiff's own filings with the Court (*i.e.*, his own affidavits, numerous motions, letters, and various grievances, medical requests and other internal KSP documents filed by Plaintiff). As discussed above, most of these kinds of documents are very rarely evidentiary in nature. At trial, if and when Plaintiff believes these documents to bear some relevance on the issues of the trial, he may move the Court to have them admitted by specifically identifying the document in question and explaining its relevance. In the interim period, the Court will deny this motion. Indeed, all of the documents requested in this motion relate to filings which have been docketed. A list of the documents requested in both this motion, as well as Plaintiff's previous motion, [DN 205], analyzed above, is attached to this Memorandum Opinion and Order as Exhibit 1.

### VIII. Motion to Produce Documents for Trial

The final motion at issue is one Plaintiff has styled as follows: "Motion to produce documents for trial and produce documents already requested." [DN 215.] The entirety of the motion as it pertains to this case is as follows:

> Comes now the plaintiff, Michael Cooper, in the above styled motion, and moves this honorable Court in a Motion to produce all documents plaintiff has requested in the discovery. Plaintiff has requested over the course of the discovery that the defendants produce certain documents for trial.

[*Id.* at 1.] This motion must be denied. As an initial matter, the Court is not privy to all documents Plaintiff has requested from one or more or all of the Defendants in this action. In reviewing the docket of this case, it appears Plaintiff has made numerous motions to compel certain discovery. [*See* DNs 44, 79, 80, 124, 190.] Certainly, in the usual course of discovery, requests for the production of documents are made between the parties and without any involvement of the Court. But the Court cannot ascertain exactly what Plaintiff is requesting with

this motion, apart from seeking a blanket order from this Court ordering Defendants, effectively, to *reproduce* all documents they already turned over to Plaintiff during discovery, or to produce unidentified documents not previously uncovered during discovery. The Court declines Plaintiff's invitation to do either of these things. The Court already instructed Plaintiff that, should he wish to have certain documents made available to him at trial, he was permitted to file specific requests, wherein he identified the exact documents he wished to have. Indeed, Plaintiff actually did that in two separate motions, analyzed above. Therefore, insofar as Plaintiff wishes the Court to order Defendants to simply reproduce all documents he has already been given access to, the Court declines.

### IX. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's motion for subpoenas [DN 176] is **GRANTED** as to Carlson and Evans, **DENIED** as to Bruin, Beavers, and Spindler, and **DISMISSED as moot** as to the security camera footage, his request for all documents and exhibits filed with the court, Heggen and Franklin.

2. Plaintiff's motion to compel [DN 190] is **DENIED.**

3. Plaintiff's motion to be transported to the courthouse [DN 204] is **DENIED.**

4. Plaintiff's motion for video footage, legal books and documents [DN 205] is **DENIED** as to the video footage and the requested documents in the docket Plaintiff seeks. This motion [DN 205] is further **DENIED** as to Plaintiff's requests for proposed witnesses Edwards, Fant, Jr., Coleman, Estioko, Moorman, Wright, Young, Harvey, Tramber, Roberts and Beavers, and is **DISMISSED as moot** as to Bruin, Evans and Carlson. If, at trial, Plaintiff believes one or more

of the documents listed in this motion to bear some relevance to the issues of the case, he may move again to have the document(s) admitted.

5. Plaintiff's motion for clothing for trial and to subpoena other witnesses [DN 209] is **DISMISSED as moot** as to Plaintiff's request for additional witnesses and is **DENIED** as to his request to be dressed in street clothes for trial. **IT IS HEREBY ORDERED that Plaintiff be afforded access to penitentiary-issued khakis to dress for trial.**

6. Plaintiff's second motion for additional documents from the case docket [DN 212] is **DENIED**. If, at trial, Plaintiff believes one or more of these documents to bear some relevance to the issues of the case, he may move again to have the document(s) admitted.

7. Plaintiff's motion to produce documents for trial and produce documents already requested [DN 215] is **DENIED.**

**IT IS SO ORDERED.**

cc: Counsel of Record

Michael Cooper, *pro se* Plaintiff

# EXHIBIT 1

# EXHIBIT 1

## Document Requests in Plaintiff's Motion, docketed at DN 205:

**[DN 7.]** DN 7 is a short letter written by Plaintiff to the Court. Attached to the letter are the following items: a "seized property receipt" signed by Defendant Lucas Fraliex; a disciplinary report form filed by former Defendant Sojnia Bower wherein she wrote Plaintiff up for masturbating in his cell; a grievance Plaintiff filed about Defendant Fraliex wherein he alleges Fraliex "trashed" his cell and asked him about his lawsuit; and another grievance Plaintiff filed about not being told soon enough about the adjustment committees findings in a disciplinary case against him.

**[DN 12.]** Plaintiff's Second Amended Complaint.

**[DN 33.]** Plaintiff's Reply to Defendants' Response to his motion for a preliminary injunction. Attached to the ten-page Reply are sixty-one pages of exhibits: they range from disciplinary report forms to grievances Plaintiff has filed, to Plaintiff's medical records

**[DN 39.]** One of Plaintiff's proposed amended complaints, but which was not incorporated into this case.

**[DN 47.]** A letter from Plaintiff requesting a docket sheet and that the Court file one of his other proposed amended complaints.

**[DN 67.]** A motion from Plaintiff styled as a "Request for Service of Documents."

**[DN 68.]** Plaintiff's "Response" to this Court's Memorandum Opinion and Order denying one of Plaintiff's motions for a preliminary injunction.

**[DN 69.]** Plaintiff's motion for reconsideration concerning this Court's previous Memorandum Opinion and Order granting in part and denying in part Plaintiff's motion to amend his complaint.

**[DN 81.]** A "declaration" from Plaintiff wherein he seeks this Court's acknowledgment that Garfield Evans is his "lead witness." He also asks leave of the Court for Evans to file a lawsuit.

**[DN 84.]** A letter from Plaintiff, wherein he has filled out a Criminal Complaint against various individuals employed by KSP for tampering with witnesses (Brandon Bruin and Garfield Evans).

**[DN 135.]** A Memorandum of law filed by Plaintiff

**Document Requests in Plaintiff's Motion, docketed at DN 212:**

**[DN 72.]** Various grievances, medical requests, and other internal KSP documents.

**[DN 75.]** A Response filed by Plaintiff regarding an order of this Court. Therein, Plaintiff asks for a transfer, asks the Clerk of Court to contact the FBI regarding his claims and alleged violations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Attached to the response is a document entitled "Notice of Unauthorized Mail" which details an unidentified piece of mail which was being held in the KSP mail room on January 1, 2017.

**[DN 81.]** A "declaration" by Plaintiff that Garfield Evans is his lead witness. Therein, Plaintiff also asks the Court not to separate the two men, and asks for a transfer for both of them.

**[DN 102.]** Two affidavits from Plaintiff.

**[DN 108.]** One of Plaintiff's motions seeking a transfer from KSP and/or release from the segregation unit there. Therein, he also asks for transfers for Evans and Brandon Bruin.

**[DN 110.]** An affidavit from Plaintiff.

**[DN 119.]** A request for the production of documents filed by Plaintiff.

**[DN 124.]** A motion to compel the production of certain documents, which was denied by this Court. [*See* DN 154.]

**[DN 135.]** A Memorandum of Law from Plaintiff, dated June 26, 2017.

**[DN 157.]** An affidavit from Garfield Evans.

**[DN 159.]** A status report filed by Defendants on August 16, 2017. Therein, Defendants certify to the Court their compliance with the Court's previously Memorandum Opinion and Order directing Defendants to provide certain documents to Plaintiff and to allow him to view certain security camera footage.

**[DN 160.]** Plaintiff's motion to dismiss.

**[DN 161.]** Plaintiff's motion for partial summary judgment.

**[DN 162.]** Plaintiff's motion for leave to seal document.

**[DN 163.]** Plaintiff's motion for default judgment.

**[DN 164.]** A sealed document not involving Plaintiff.

**[DN 178.]** Plaintiff's motion to amend/correct this Court's previous Memorandum Opinion & Order granting in part and denying in part Defendants' motion for summary judgment.

**[DN 182.]** A letter to the Court from Plaintiff detailing an alleged assault by a corrections officer who is not a party to this action. Attached to the letter is a grievance form dated November 1, 2017.

**[DN 183.]** Plaintiff's motion to alter/amend this Court's previous Memorandum Opinion denying in part and dismissing as moot in part Plaintiff's previous motions for partial summary judgment and for leave to seal document. Attached to the motion is a public records request filed by Plaintiff on September 11, 2017 seeking access to the incoming "legal mail log from August 3rd to August 24th of 2017."

**[DN 184.]** Although docketed as "Notice of Appeal (Interlocutory), DN 184 appears to be a duplicate of DN 183, explained above.

**[DN 189.]** Plaintiff's motion for reconsideration of this Court's previous Memorandum Opinion & Order denying Plaintiff's motion for partial summary judgment.